233 P.3d 52

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Corey Richard MUNOZ, Defendant–Appellant.**

No. 36542–2009.

Supreme Court of Idaho,
Boise, February 2010 Term.

March 16, 2010.

Rehearing Denied May 13, 2010.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Robyn A. Fyffe argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. John C. McKinney argued.

EISMANN, Chief Justice.

This is an appeal from the denial of a motion to suppress. The central issue is whether the district court erred in believing the officer's testimony during the suppression hearing, where that testimony was irreconcilable with the same officer's testimony during the preliminary hearing. We hold that the credibility of witnesses is for the trial court to determine and uphold the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

On July 5, 2005, Detective Jason Pietrzak of the Garden City Police Department and another detective drove in an unmarked car to a trailer park reputed to be the residence of an individual named Marsh, who was wanted on an outstanding felony warrant. They had a jail booking photograph and a physical description to identify Marsh. They drove through the trailer park and ran some of the license plates on vehicles they saw. They also stopped and talked with a gentleman near the front entrance who appeared to be a caretaker. As they were leaving, a green Geo automobile went past them into the trailer park. They saw two people in the Geo, and the front-seat passenger looked like Marsh. The detectives parked on the side of the road and waited.

The Geo then drove out of the trailer park, and the detectives could see three people in it. The person who looked like Marsh was now sitting in the back seat, and the person who had driven the Geo into the trailer park was sitting in the front passenger seat. A female was driving the Geo. The detectives followed the Geo and radioed for officers in a marked patrol car to stop it. At least two marked patrol cars responded and stopped the Geo about one and one-half miles from the entrance to the trailer park.[1]

The patrol officers who stopped the Geo drew their weapons and ordered the occupants to get out of the car and walk back to where the officers were. Three people got out of the Geo, and they were handcuffed, patted down for weapons, and separated. The officers discovered that the person believed to be Marsh was actually Pfisterer. He had an outstanding misdemeanor warrant and was arrested. The two other occupants in the car were then unhandcuffed.

Detective Pietrzak discovered a small amount of marijuana on the floorboard of the front passenger seat, where Corey Munoz had been sitting when the officers stopped the Geo. He described it as a "chunk" of dried, compacted marijuana leaf about the size of a nine-volt battery. He asked Munoz if that marijuana was his, and Munoz answered that it was. Detective Pietrzak asked Munoz if he had any more, and Munoz stated that he did and pulled a sandwich bag full of marijuana out of his pants pocket. Detective Pietrzak then arrested Munoz for possession of that marijuana. One of the central issues on this appeal is Detective

---

1. At some point, a third patrol car arrived at the scene of the stop.

Pietrzak's conflicting testimony regarding his discovery of the marijuana on the floorboard.

On August 9, 2005, Munoz was charged with felony possession of more than three ounces of marijuana. During the preliminary hearing held on November 25, 2005, Detective Pietrzak was asked why they searched the Geo. He answered, "Well, once we placed Mr. Pfisterer under arrest, we searched incident to that arrest." He testified, "As far as the chronological order of it, ... I know that we went up and glanced, made sure there was no one in the car, nothing hazardous while we conducted our business 30 feet away or a car's length away from it. After Mr. Pfisterer was arrested on the warrant, the vehicle was searched incident to his arrest." Detective Pietrzak was then asked whether "the only reason you go back to the vehicle to conduct a search is your belief it is a search incident to arrest of Mr. Pfisterer," and he answered, "Absolutely." He added that "the actual physical search of the car, *when I found the marijuana?* Yes that's incident to Mr. Pfisterer's arrest." (Emphasis added.) When asked whether he looked through the window or opened the door of the Geo, Detective Pietrzak testified: "I opened the door and began searching. I looked above the visor, looked on the dashboard. At some point, I looked on the passenger floor board and *then found the marijuana.*" (Emphasis added.)

After Munoz was bound over to answer to that charge in the district court, he filed a motion to suppress, which was heard on August 28, 2006. During that hearing, Detective Pietrzak gave a different version of how he discovered the marijuana on the floorboard of the Geo. He testified that after the occupants were out of the Geo and before Pfisterer was arrested on the misdemeanor warrant, he walked up to the vehicle to make sure nobody else was in it. When asked if he noticed anything of evidentiary value, he stated that he did. When asked what he noticed, he answered, "[T]here was a large piece of green dried marijuana that was on the front passenger side floorboard." When asked if it was in plain view, he answered, "Oh, absolutely. It was in the middle of the floorboard." In response to further questioning, he testified that he did not have to open the car door to see the marijuana because the passenger door was open and he could see the marijuana from where he was standing on the street.[2]

In his motion to suppress, Munoz challenged: (1) the stop of the Geo; (2) the search of the Geo "upon the questionable pretext of a 'search incident to that arrest' [of Pfisterer]"; (3) questioning Munoz without giving him *Miranda* warnings; and (4) searching Munoz without probable cause (Munoz testified that Pietrzak walked over to him, patted him down, and removed the marijuana out of Munoz's pocket). He sought to suppress "all items of evidence and all statements made." On September 5, 2006, the district court issued its decision and order denying Munoz's motion to suppress in its entirety.

Munoz ultimately pled guilty to the charge, reserving the right to appeal the denial of his motion to suppress. He was sentenced to a

2. Detective Pietrzak's testimony was as follows:
Q. Okay. At that point in time then what did you do?
A. Well, prior to actually speaking to Mr. Pfisterer about that and spending time on radio traffic we needed to ensure there was only three people in the vehicle. I walked up and made sure of that visually.
Q. Okay. So in the time between talking to Mr. Pfisterer—well, excuse me, the time that the occupants were pulled out of the vehicle and the time that Mr. Pfisterer was arrested on the warrant, you went back to the vehicle just to make sure everybody was out of the vehicle?
A. Correct.
Q. Did you notice anything inside the vehicle of evidentiary value at that time?
A. Yes, I did.
Q. What did you notice?
A. Yes, there was a large piece of green dried marijuana that was on the front passenger side floorboard.
Q. Was it in plain view at that time?
A. Oh, absolutely. It was in the middle of the floorboard.
Q. Now, did you have to open the windows or the cars or anything to view that?
A. No, the door—on the passenger's side the door was open and on the driver's side the door was closed.
Q. So you could view that standing from the street where you were?
A. Yes.

suspended prison term and probation, and then timely appealed.

■ The appeal was first heard by the Idaho Court of Appeals. It held that a witness who testifies under oath to two irreconcilable descriptions of an event and does not give any explanation for the inconsistency cannot, as a matter of law, be credible. Therefore, all of Detective Pietrzak's testimony had to be, in essence, stricken. Without that testimony, the State failed to prove that the marijuana in the Geo was lawfully obtained. It had to be suppressed as did all other evidence as fruit of the presumptively unlawful vehicle search, including Munoz's statements and the marijuana from his pocket. The Court of Appeals then reversed the order denying Munoz's motion to suppress. The State filed a petition for review, which we granted. In cases that come to this Court on a petition for review of an opinion of the Court of Appeals, we directly review the decision of the lower court. *State v. Doe,* 144 Idaho 819, 821, 172 P.3d 1094, 1096 (2007).

## II. ISSUES ON APPEAL

1. Did the district court err in holding that the stop of the Geo did not violate the Fourth Amendment?

2. Was there substantial and competent evidence supporting the district court's findings of fact regarding the search of the Geo?

3. Did the district court err in holding that *Miranda* warnings were not required because Munoz's freedom of action was not curtailed to a degree associated with formal arrest?

4. Did the district court err in holding that Munoz's act of pulling the marijuana out of his pocket was voluntary?

## III. ANALYSIS

**A. Did the District Court Err in Holding that the Stop of the Geo Did Not Violate the Fourth Amendment?**

■ Munoz was seized when the police stopped the Geo in which he was a passenger. *Brendlin v. California,* 551 U.S. 249, 263, 127 S.Ct. 2400, 2410, 168 L.Ed.2d 132, 143–44 (2007). "When a defendant moves to exclude evidence on the grounds that it was obtained in violation of the Fourth Amendment, the government carries the burden of proving that the search or seizure in question was reasonable." *State v. Bishop,* 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009).

■ "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity," *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 628 (1981), or "is wanted for past criminal conduct," *id.* at n. 2. In this case, the officers stopped the Geo to investigate their suspicion that a passenger was Marsh, for whom there was a felony arrest warrant. That suspicion turned out to be incorrect. The fact that the investigation showed that the officers were incorrect does not invalidate the stop. An investigatory stop "does not deal with hard certainties, but with probabilities." *Id.* at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629. Its purpose is to obtain information to determine whether a crime has been, is being, or is about to be, committed or whether the person is wanted for past criminal activity. A reasonable-suspicion determination "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740, 750 (2002). The determination "is grounded in the standard of reasonableness embodied in the Fourth Amendment." *United States v. Hensley,* 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604, 611 (1985).

■ The district court found that "the police acted reasonably in stopping the defendant's vehicle and ordering the occupants out. The defendant had an individual in the back seat of his vehicle that looked to the police like a man wanted by them for felony probation violation and felony eluding." Munoz argues that the district court erred in holding that Detective Pietrzak had a reasonable articulable suspicion in believing that the passenger in the Geo (Pfisterer) was Marsh. He contends that Detective Pietrzak

"momentarily observed Chris [Pfisterer] in the front passenger seat of the Geo as the two vehicles passed one another" and that "[d]uring this fleeting observation, the detective testified that he noted a 'protruding ear ... configuration,' that Mr. Marsh and Chris purportedly shared, both had brown hair and that height and weight were not 'wildly outside' the information available to the detectives." According to Munoz, "These facts were insufficient to create a reasonable belief that [Pfisterer] was Mr. Marsh and to justify conducting the high risk traffic stop."

■ "[D]eterminations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996). However, in conducting that review the appellate court "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* The review must be based upon the totality of the circumstances, not upon an individual examination of each observation by the officer taken in isolation. *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740, 750 (2002).

Detective Pietrzak and the other detective each had a photograph of Marsh and a physical description of him. They had information that Marsh resided in the trailer park. As they were leaving the trailer park, they saw the Geo drive past. Both occupants of the Geo looked at the detectives as the Geo passed within five feet of the detectives' vehicle. The detectives were in an SUV and were able to look down at the occupants and clearly see into the Geo. Detective Pietrzak got a good look at the person he believed to be Marsh. Detective Pietrzak testified that the individual they saw in the front seat "was very similar" to Marsh's photograph and he "looked to be the identical person we were looking for." He also stated that "the individual we were looking for had very large ears, and white male, smallerish," and that

Pfisterer matched the physical description of Marsh. Considering the totality of the circumstances, the district court did not err in finding that the detectives reasonably believed that Pfisterer was Marsh.

## B. Was There Substantial and Competent Evidence Supporting the District Court's Findings of Fact Regarding the Search of the Geo?

■ During the suppression hearing, Detective Pietrzak testified that *before* Pfisterer's arrest he walked up to the Geo to make sure nobody else was in it and that while standing on the street and looking through the open passenger door [3] he saw the marijuana on the floorboard. The district court based its findings upon this testimony. It found as follows:

> After the stop, Detective Pietrzak went up to the vehicle to make sure every one [sic] was out of it. This action was also reasonable since it would make no sense for the police to order all occupants out of a vehicle during a traffic stop, for officer safety reasons, without allowing them the ability to look in the vehicle to make sure everyone was actually out. Pietrzak then sees the marijuana on the floorboard in plain view, beneath where the defendant had been sitting. He then, informally and briefly, asked the defendant, who was not handcuffed and not under arrest, about the marijuana in the car and the defendant told him that it was his and when asked if there was any more he handed Pietrzak the baggy of marijuana out of his clothes. (Citation and footnote omitted.)

Detective Pietrzak's testimony at the suppression hearing conflicted with his earlier testimony at the preliminary hearing. There he testified that he "found" the marijuana while he was searching the Geo *after* Pfisterer's arrest. Munoz contends: "It is not possible to reconcile Detective Pietrzak's varying versions of events. Therefore, his testimony cannot constitute substantial, competent evidence to support the district court's finding that the marijuana was in

**3.** Detective Pietrzak testified that he did not open the passenger door, and there is no contention that any officer did. The inference is that it was

left open by Munoz when he got out of the vehicle.

plain view and was insufficient to overcome the state's burden of showing that the warrantless search was reasonable."

▉▉▉▉ "When we review an order granting or denying a motion to suppress, we accept the trial court's factual findings, unless they are clearly erroneous." *State v. Fees*, 140 Idaho 81, 84, 90 P.3d 306, 309 (2004). "Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence. Decisions regarding the credibility of witnesses, weight to be given to conflicting evidence, and factual inferences to be drawn are also within the discretion of the trial court." *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009).

▉▉▉ During the suppression hearing, Detective Pietrzak was not questioned about his preliminary hearing testimony, nor was he asked to explain his conflicting testimony. However, the district court was aware of the Detective's preliminary hearing testimony. "The trial judge is in a far better position than we to weigh the demeanor, credibility and testimony of witnesses and the persuasiveness of all the evidence. Therefore, we do not weigh the evidence." *Hudelson v. Delta Intl. Mach. Corp.*, 142 Idaho 244, 248, 127 P.3d 147, 151 (2005). The district court's findings are supported by substantial, competent evidence.[4]

▉▉▉▉ "There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740,

103 S.Ct. 1535, 1542, 75 L.Ed.2d 502, 512–13 (1983) (plurality opinion). Viewing the interior of a motor vehicle while standing outside of it is not a search within the meaning of the Fourth Amendment. *Id.* Once the officers had probable cause to believe that the item on the floorboard of the Geo was marijuana, they could enter the Geo to seize it. *Colorado v. Bannister*, 449 U.S. 1, 4, 101 S.Ct. 42, 43–44, 66 L.Ed.2d 1, 4 (1980). Therefore, the district court did not err in upholding the search of the Geo.

## C. Did the District Court Err in Holding that *Miranda* Warnings Were Not Required Because Munoz's Freedom of Action Was Not Curtailed to a Degree Associated with Formal Arrest?

▉▉▉▉ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that the prosecution could not use exculpatory or inculpatory statements stemming from custodial interrogation of a defendant unless the questioning was preceded by what later became known as *Miranda* warnings. The Court required, "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. Persons temporarily detained pursuant to ordinary traffic stops are not "in custody" for the purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334–35 (1984). Even though the person is not formally arrested, "the

---

4. Under the law in effect at the time, the search of the Geo would have complied with the Fourth Amendment under either Detective Pietrzak's versions of what occurred. In *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 774–75 (1981) (footnote omitted), the United States Supreme Court had held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Under *Belton*, the Geo could have been searched incident to Pfisterer's arrest. After the suppression hearing in this case, the Supreme Court of the United States issued its opinion in *Arizona v. Gant*, — U.S. ——, 129 S.Ct. 1710,

173 L.Ed.2d 485 (2009), in which it narrowed *Belton* and held, "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Because Pfisterer was apparently handcuffed and in the back of a patrol car when the Geo was searched and there is no indication that the Geo contained evidence related to his arrest, the search could not have been authorized as incident to his arrest. *Id.* Since *Gant* was issued over two and one-half years after the suppression hearing in this case, Detective Pietrzak obviously did not change his testimony to conform to that opinion.

safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.*

■■■ The district court found that Detective Pietrzak "informally and briefly, asked the defendant, who was not handcuffed and not under arrest, about the marijuana in the car and the defendant told him that it was his." The court also cited cases holding that *Miranda* requirements do not apply to noncustodial interrogations or where a person's freedom of action has not been curtailed to a degree associated with formal arrest. Thus, it is clear that the district court found that Munoz was not in custody for the purposes of *Miranda* when Detective Pietrzak questioned him about the marijuana on the floorboard of the Geo. Munoz contends that this conclusion is contrary to the evidence.

It is undisputed that when the officers stopped the Geo, they ordered the occupants out of the vehicle at gunpoint, patted them down for weapons, handcuffed them, and separated them while they investigated the identity of the person they believed was Marsh. Once the officers determined it was not Marsh, but was Pfisterer, they arrested him on the misdemeanor warrant and put him in the back seat of a patrol car. At that time, the felony stop was over. Munoz and the female driver were unhandcuffed. Munoz knew that they had been stopped because the officers thought that Pfisterer was Marsh. The female occupant was allowed to retrieve something out of the Geo and was walking around, and Munoz testified that he was standing thirty to fifty feet from the Geo. Less than ten minutes after Pfisterer's arrest, Detective Pietrzak and the other detective walked up to where Munoz was standing to ask him about the marijuana on the floorboard of the car. By then, none of the officers had their weapons drawn, and the record does not indicate that there were any other officers near Munoz. Detective Pietrzak testified regarding his questioning of Munoz as follows:

Q. Could you describe for the Court the nature of this conversation that you had with Mr. Munoz?

A. It was pretty light. With the amount of marijuana that was on the floorboard, we just wanted to talk to him. Just give him a ticket for it and be done with it.

Q. When you say it was "light," why do you say that?

A. You know, I was pretty open with him. I asked him, hey, you know, was that yours on the floorboard. He said that it was. He identified it as marijuana and that he took ownership of it and I asked him if he had any more.

■■■ Just as a detention that is not custodial for the purposes of *Miranda* can become custodial if the person detained "thereafter is subjected to treatment that renders him 'in custody' for practical purposes," *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334–35 (1984), what may begin as a custodial detention can become noncustodial. "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.* at 442, 104 S.Ct. at 3151, 82 L.Ed.2d at 336. Munoz had the burden of proving that at the time he was questioned, he was in custody for the purposes of *Miranda*. *Id.* at 441, 104 S.Ct. at 3151, 82 L.Ed.2d at 335–36; *State v. James*, 148 Idaho 574, 225 P.3d 1169 (2010). The district court did not err in holding that at the time of the questioning, Munoz was not in custody for the purposes of *Miranda*.

**D. Did the District Court Err in Holding that Munoz's Act of Pulling the Marijuana Out of His Pocket Was Voluntary?**

■■■ The district court found that after Munoz admitted that the marijuana on the floorboard of the Geo was his, Detective Pietrzak "asked if there was any more [and] he handed Pietrzak the baggy of marijuana out of his clothes. This police action was also reasonable and the defendant chose to voluntarily answer the detective's questions and produce the marijuana." On appeal, Munoz contends that his "consent to the search of his pocket, by producing the baggie of marijuana at the detective's request, was not the product of free will."

There was no search of Munoz's pocket. After Munoz admitted that the marijuana on the floorboard was his, Detective Pietrzak

asked if he had any more. Munoz responded by voluntarily reaching into his pocket and pulling out the baggie of marijuana. The Detective did not search Munoz, nor did he ask Munoz to empty his pockets or to produce the marijuana. Munoz's actions of reaching into his pocket and pulling out the marijuana were not in submission to an express or implied assertion of authority. It was simply a voluntary response to the question of whether he had any more marijuana.[5] The district court did not err in refusing to suppress that marijuana.

## IV. CONCLUSION

The judgment of the district court is affirmed.

Justices BURDICK, J. JONES, W. JONES and HORTON concur.

---

**5.** Munoz does not argue that producing the marijuana was a testimonial communication. Even if it were, he was not in custody for the purposes of *Miranda,* and therefore it could not be suppressed on that ground.