**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37806**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2011 Unpublished Opinion No. 412** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: March 24, 2011** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **SHANNON LYNN JAMES,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

PERRY, Judge Pro Tem

Shannon Lynn James appeals from a judgment of conviction entered following her conditional guilty plea to possession of methamphetamine. Idaho Code Section 37-2732(c)(1). On appeal, she challenges the district court's denial of her motion to suppress. We affirm.

Just before midnight on January 14, 2010, James was stopped by officers for failing to stop before crossing a sidewalk when exiting an alley and entering the street. Suspecting James was driving while under the influence of a stimulant, the officers had James perform field sobriety tests. Based on the officers' observations, James's physical appearance, and her admission to using methamphetamine the night before, the officers placed James under arrest for driving under the influence. A subsequent search of her person and her vehicle revealed methamphetamine. The state then charged James with possession of methamphetamine. James filed a motion to suppress. At the hearing on the motion to suppress, the two officers testified

1

concerning their observations. The district court entered written findings of fact and denied James's motion. James appeals.

Determinations of reasonable suspicion and probable cause are reviewed de novo on appeal. *State v. Munoz*, 149 Idaho 121, 127, 233 P.3d 52, 58 (2010). In conducting that review the appellate court "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* In Fourth Amendment applications, the reasonableness of police conduct is judged against an objective standard. *State v. Weaver*, 127 Idaho 288, 291, 900 P.2d 196, 199 (1995). We examine whether "the facts available to the officer at the moment of the seizure . . . [would] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). *See also Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990). This standard allows room for some mistakes on the part of police officers, so long as the mistakes are those of reasonable persons. *Brinegar v. United States*, 338 U.S. 160, 176 (1949). *See also State v. Buhler*, 137 Idaho 685, 688, 52 P.3d 329, 332 (Ct. App. 2002); *State v. McCarthy*, 133 Idaho 119, 124, 982 P.2d 954, 959 (Ct. App. 1999); *State v. Hawkins*, 131 Idaho 396, 401, 958 P.2d 22, 27 (Ct. App. 1998). "[I]n order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." *Rodriguez*, 497 U.S. at 185. Subjective good faith on the part of the officer is not enough. As the United States Supreme Court has explained, "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Terry*, 392 U.S. at 22. The mistake must be one that would be made by a reasonable person acting on the facts known to the officer. *See Rodriguez*, 497 U.S. at 186; *Hawkins,* 131 Idaho at 401, 958 P.2d at 27. In sum, a traffic stop will not violate the Fourth Amendment if the officer reasonably suspects a violation of traffic laws even if later investigation dispels the suspicion.

An investigation detention must be supported by reasonable articulable suspicion that criminal activity is underway. *State v. Gallegos,* 120 Idaho 894, 896, 821 P.2d 949, 951 (1991). Reasonable suspicion is a less demanding standard than probable cause. *Id.* Whether the officer

had the requisite reasonable suspicion to detain a citizen is determined on the basis of the totality of the circumstances. *State v. Van Dorne,* 139 Idaho 961, 964, 88 P.3d 780, 783 (Ct. App. 2004).

The standard for whether probable cause to arrest exists is an objective one. Probable cause for an arrest exists where the officer possesses information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty. *State v. Kysar,* 116 Idaho 992, 993, 783 P.2d 859, 860 (1989). In evaluating a police officer's determination of probable cause in the field, a court must take into account the factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act. *Id.* In determining whether there is probable cause for an arrest, an officer is entitled to draw reasonable inferences from the available information in light of the knowledge that he has gained from his previous experience and training. *Id.*

On appeal, James does not challenge the basis for the initial traffic stop. James asserts, however, that the officers did not have reasonable suspicion to expand the scope of the traffic stop to investigate her for driving under the influence. She further contends that following their investigation for driving under the influence, the officers lacked probable cause to arrest her for that offense.

At the evidentiary hearing, Officer Lasher of the Idaho Falls Police Department and his training officer, Officer Poulter, testified. Officer Lasher testified that prior to joining the Idaho Falls Police Department he had been a law enforcement officer in California, working both patrol and as part of the Street Crimes Unit. He testified extensively on his California POST Academy training in the areas of drug recognition and the effects of certain drugs on the human body, as well as his experience in California in using those acquired skills.

On the night of James's arrest, Lasher and Poulter were parked in the vicinity of a house which was suspected of drug activity. Noticing James's vehicle parked at the house, they contacted dispatch and were advised that the owner of the vehicle was a known drug user. James exited the residence and left in her car. Based on the unchallenged traffic violation, James's vehicle was stopped by the officers. Officer Lasher approached the vehicle and spoke with James. Lasher testified that he noticed James had droopy eyes, slow speech, appeared drowsy and had shaking, twitching and jerking or exaggerated movements. He characterized the drowsiness as being different than being sleepy. Believing that James was impaired and possibly

3

under the influence of a stimulant, Lasher had James exit her vehicle to perform field sobriety tests.

After James exited the vehicle, Lasher checked her pulse which he determined to be 96 beats per minute, or slightly fast. He performed the Romberg test, wherein James estimated that thirty seconds had passed at twenty-six seconds. He also noticed that James was swaying during this test. Although the gaze nystagmus test was negative, Lasher testified that a pupil reaction test showed an atypical response. Lasher observed recent "track" marks on James's arm and upon questioning, James admitted to using methamphetamine the night before. Based on his observations and admissions by James, Lasher placed James under arrest for driving under the influence.

Officer Poulter testified he had been with the Idaho Falls Police Department for seventeen years and to his training and experience on the effects drugs have on the body. He testified that he provided backup to Lasher and to his observations. Poulter testified that while James was in her vehicle he observed erratic, excessive and uncontrolled body movements on her arms and legs. He further testified that once outside of her vehicle, James's movements became more jerky. Finally, he testified that James had a pasty and dry mouth and a runny nose.

The district court's findings of fact reflect the testimony given by the two officers. Based on those findings, the district court concluded that the detention and investigation of James for the purpose of determining whether she was operating her vehicle under the influence and her subsequent arrest were both constitutionally reasonable. We agree with the district court. Although James argues an innocent explanation for each of the observations by the officers, when taken together they are sufficient to support the district court's decision. James has failed to show error.

The district court's denial of James's motion to suppress is affirmed.

Judge LANSING and Judge GUTIERREZ **CONCUR.**

4