# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45042

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Boise, June 2018 Term** |
| Plaintiff-Appellant, | ) | |
| | ) | **Filed: October 29, 2018** |
| v. | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| BRIANNA NICOLE ANDERSEN, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County, Hon. Benjamin R. Simpson, District Judge.

The order of the district court is <u>reversed.</u>

Hon. Lawrence G. Wasden, Attorney General, Boise, for Appellant. Kale D. Gans argued.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Respondent. Andrea W. Reynolds argued.

_____

HORTON, Justice.

The State of Idaho appeals from the decision of the district court granting Brianna Nicole Andersen's motion to suppress statements that she made to a police officer. The district court granted Andersen's motion based on its finding that Andersen's statements were made without *Miranda* warnings during a custodial interrogation and that Andersen's statements were not voluntary. We reverse.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

At approximately midnight on October 1, 2016, Coeur d'Alene police officers responded to an apartment after receiving a 911 call from Andersen reporting that "there was a male who was unconscious, not breathing and unresponsive in the bathroom area of the residence." Officer Nielsen was the first police officer to enter the residence. There were four people inside, including Andersen. Officer Nielsen found a young man, later determined to be Ryan Stebbins,

1

lying unconscious on the bathroom floor. He determined that Stebbins was breathing and had a pulse and observed a used syringe lying on the bathroom counter. Officer Nielsen testified at Andersen's preliminary hearing that he believed Mr. Stebbins might have been under the influence of heroin and that the syringe was for "a narcotic analgesic of some kind."

Several more officers responded to the scene—Officers Niska, Schatz, Rodgers, Cohen and Sergeant Schneider. Paramedics arrived at the residence approximately five minutes after the police officers' arrival. While Officer Nielsen was in the bathroom with Stebbins, other officers began interviewing the other persons in the apartment.

Sergeant Schneider assigned Officer Niska to question Andersen. Officer Niska asked Andersen, "Why don't you come talk to me?" Andersen and Officer Niska went into an open area adjacent to the bathroom. Andersen sat down in an armchair. She was neither handcuffed nor told that she was under arrest. No weapons were drawn and Andersen was not threatened. Andersen was not advised of her *Miranda*[1] rights at any point during the interview.

Officer Niska asked Andersen for her identification, which she did not have on her person. Officer Niska then requested Andersen's name and identifying information, which Officer Niska relayed to dispatch. Officer Niska then questioned Andersen at length about what transpired. Andersen initially reported that the occupants of the residence had been downstairs in the basement eating pizza when Stebbins went upstairs. Then "they heard a loud thump, and . . . they found him unconscious."

Sergeant Schneider joined in the questioning after approximately ten minutes. In comparison to Officer Niska, his questions and tone were aggressive. The first question he asked Andersen was, "So, you use too, or just him?" Andersen responded that she had been clean for two and a half years. Sergeant Schneider interrupted, asking, "Where did you put the dope?" Andersen responded that she didn't have anything. Sergeant Schneider indicated disbelief at her answer, telling Andersen, "Stop it . . . no you are, you are." He continued to question her, stating at one point, "You're worried about getting in trouble because you've got dope." Andersen denied using drugs and that she had been in the bathroom with Stebbins. Sergeant Schneider

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

responded, "More lies. You were in the bathroom with him." Andersen continued to defend herself, telling the officers they could "search [her] stuff."

Andersen asked Stebbins, who by this time was in the living room, if he was okay. She made a movement as if to rise, and both officers forcefully instructed her to "stay seated." Sergeant Schneider then accused Andersen of hiding the drugs and not telling the truth, sarcastically suggesting that "some magic heroin fairy" had hidden the heroin. Andersen made another movement and was again told to "stay seated."

After Sergeant Schneider disengaged from the questioning, Officer Niska questioned Andersen for a considerable time. At one point, Officer Niska told Andersen to, "Quit lying . . . enough with the B.S. So, what really happened?" Andersen then told Officer Niska that she had been in the bathroom with Stebbins and, after he passed out, she had flushed a syringe down the toilet prior to placing the 911 call because she did not want Stebbins to get in trouble.

Andersen then consented to a search of her purse. The purse held two plastic baggies containing heroin. Officer Niska arrested Andersen and a search of Andersen's person revealed two syringe caps in her pocket.

Andersen was charged by information with possession of heroin and destruction of evidence. Andersen filed a motion to suppress, contending that her statements were obtained in violation of her *Miranda* rights, that the physical evidence obtained as a result of the statements was "fruit of the poisonous tree," and that the search of her purse was the product of coercion.

When Andersen's motion came before the district court for hearing, neither party presented testimony. Instead, the parties stipulated to introduction of the preliminary hearing transcript and a video recording created by Officer Niska of her contact with Andersen. The parties further agreed that the district court could decide the motion based upon briefing that had previously been submitted.

The district court clarified that it was being asked to decide two questions. The first was whether Andersen was in custody for purposes of its *Miranda* analysis. The second question was whether the search of Andersen's purse was lawful. The latter question presented two distinct

sub-issues: whether the search was tainted by the claimed *Miranda* violation[2] and whether Andersen's consent to search the purse was the product of coercion.

The district court then granted Andersen's motion to suppress her statements and denied her request to suppress the results of the search of her purse. As to Andersen's statements, the district court held:

> Okay. The Court finds from a review of the CD at time stamp 1550 approximately, the defendant attempted to get up during the interview. She was rather forcefully told to sit down and stay. The Court finds based upon that, she was in custody. Based upon that, I'm going to suppress all of her statements made to law enforcement after that fact or after that statement. So those will not be used against her.

The district court then spent considerably more time addressing the search of the purse. The district court addressed a number of factors, including: its conclusion that Andersen was in custody[3] at the time of the consent; the number of police officers present and their engagement with other persons found in the residence; the absence of drawn weapons; the failure to advise Andersen of her *Miranda* rights; whether Andersen was told she had a right not to consent to the search; and whether she was told a search warrant could be obtained. The district court noted that early on Andersen had "volunteered" to permit the officers to search her purse. The district court then stated that it was evaluating the totality of the circumstances, and concluded, "based on the total conversation between the defendant and law enforcement, that [Andersen] knew that she was being asked for consent to search and she volunteered it, she agreed to it." Thus, the district court denied the motion to suppress evidence arising from the search of the purse.

The district court's ruling on the *Miranda* issue prompted the prosecutor to seek clarification as to whether Andersen's statements "were voluntarily made" and thus, potentially available as impeachment evidence at trial. The district court ruled:

> I think initially [the officers] were fairly forceful. The farther they went into it, the more conversational it became. But I'm going to find that her statements were not voluntary. They're not useful for any purpose. They're constitutionally prohibited.

---

[2] This claim is not at issue in this appeal.

[3] At a different point in its discussion of the motion to suppress the results of the search of Andersen's purse, the district court characterized Andersen as being "detained." As will be discussed later, there is a significant distinction between "detention" and "custody" for purposes of the *Miranda* analysis.

4

The district court then entered an order partially granting Andersen's motion to suppress. The State timely appealed from that order.

## II.     STANDARD OF REVIEW

In an ordinary appeal from an order granting or denying a motion to suppress, our standard of review is bifurcated. "This Court will accept the trial court's findings of fact unless they are clearly erroneous. However, this Court may freely review the trial court's application of constitutional principles in light of the facts found." *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009) (citation omitted). The deference to the trial court's factual findings reflects "the trial court's special role to weigh conflicting evidence and judge the credibility of witnesses." *Hull v. Giesler*, 163 Idaho 247, 250, 409 P.3d 827, 830 (2018).

This appeal presents the unusual situation where this Court has exactly the same evidence before it as was considered by the district court: the transcript of the preliminary hearing and the video recording of Officer Niska's contact with Andersen. In such instance, we do not extend the usual deference to the district court's evaluation of the evidence. "Under these limited circumstances, this Court has determined that its role on appeal is to freely review the evidence and weigh the evidence in the same manner as the trial court would do." *State v. Lankford*, 162 Idaho 477, 492, 399 P.3d 804, 819 (2017) (evaluating district court's ruling on motion for new trial).

## III.     ANALYSIS

This appeal presents two issues for our resolution. We first consider whether the district court correctly determined that Andersen was in custody for purposes of the *Miranda* analysis. We then turn to the district court's conclusion that Andersen's statements were not voluntary.

### A. Andersen was not in custody during her interrogation.

The distinction between an investigatory detention and an arrest is significant. Although both are seizures for purposes of Fourth Amendment analysis, *see, e.g.*, *State v. Pachosa*, 160 Idaho 35, 38, 368 P.3d 655, 658 (2016), *Miranda* protections are triggered only by arrest. "*Miranda* warnings are required where a suspect is in custody, a fact determined by whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *State v. James*, 148 Idaho 574, 576–77, 225 P.3d 1169, 1171–72 (2010) (internal

5

quotations and citations omitted). However, persons temporarily detained by law enforcement are not in custody for purposes of *Miranda*. *State v. Munoz*, 149 Idaho 121, 128–29, 233 P.3d 52, 59–60 (2010). The burden of proving that the defendant was in custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

"To determine whether custody has attached, a court must examine all of the circumstances surrounding the interrogation. The test is an objective one and the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his [or her] situation." *Id*. (internal quotations and citations omitted). As the Supreme Court of the United States has explained:

> In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of "the objective circumstances of the interrogation," *Stansbury v. California*, 511 U.S. 318, 322–23 (1994), a "reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

*Howes v. Fields*, 565 U.S. 499, 509 (2012). When determining whether a defendant is in custody for purposes of *Miranda*, courts consider the totality of the circumstances, including: where the questioning occurred, the duration of the interrogation, whether the defendant is informed that the detention may not be temporary, and the intensiveness of the questions and requests of the police officer. *James*, 148 Idaho at 578, 225 P.3d at 1173.

As noted previously, the district court found that Andersen was in custody because the officers "rather forcefully told [her] to sit down and stay" when she began to rise from the armchair in which she was seated. Our review of the evidence leads us to a different conclusion. In reaching this conclusion, we note the United States Supreme Court's observation that:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.

6

*Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

In this case, the interrogation took place in a private residence. During the entire interaction, Andersen spoke with only one or two police officers at a time. The conversation between Andersen and Officer Niska began cordially. It became substantially less cordial for the brief period when Sergeant Schneider entered the conversation, but improved substantially when he left. The questioning lasted for less than one hour. Indeed, the only restraint on Andersen's liberty occurred on the two occasions when she was directed to remain seated. When evaluating the totality of the circumstances, no single fact is controlling. *See State v. Ybarra*, 102 Idaho 573, 576, 634 P.2d 435, 438 (1981) (holding that drawn guns during an encounter was "not controlling" in determining custody). Our evaluation of the totality of the circumstances leads us to conclude that Andersen was detained, but not subjected to a restraint on her freedom of movement of the degree associated with a formal arrest. Accordingly, we reverse the district court's holding that Andersen's *Miranda* rights were violated and its corresponding suppression of her statements.

### B. Andersen's statements were not made involuntarily.

"When a defendant alleges an interrogation to be coercive, the State bears the burden of proving voluntariness of the defendant's confession by a preponderance of the evidence." *State v. Yager*, 139 Idaho 680, 685, 85 P.3d 656, 661 (2004) (citing *Lego v. Twomey*, 404 U.S. 477 (1972)). To determine the voluntariness of a statement, courts examine the totality of the circumstances to determine "whether the defendant's will was overborne." *Id.* The Court has outlined the following factors to be considered in determining whether a confession was voluntary: "(1) Whether *Miranda* warnings were given; (2) The youth of the accused; (3) The accused's level of education or low intelligence; (4) The length of detention; (5) The repeated and prolonged nature of the questioning; and (6) Deprivation of food or sleep." *State v. Radford*, 134 Idaho 187, 191, 988 P.2d 80, 84 (2000) (quoting *State v. Troy*, 124 Idaho 211, 214, 858 P.2d 750, 753 (1993)); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The presence of *Miranda* warnings is a particularly significant factor. *Missouri v. Seibert*, 542 U.S. 600, 608–09 (2004).

We note that Andersen's motion to suppress did not allege that her statements were involuntary. Rather, this only became an issue after the district court granted her motion to suppress based upon its finding of a *Miranda* violation. Our review of the totality of the evidence leads us to conclude that her statements were voluntary. Andersen is an adult and exhibited at least normal intelligence during the interview. The questioning lasted approximately an hour. She was not deprived of food or sleep. Indeed, the only aspect of the interrogation that presents any concern as to whether her statements were voluntary, apart from the failure to give *Miranda* warnings, was when Sergeant Schneider loudly accused her of lying. However, during this most heated point of the interaction, Andersen shouted back at the officers, clearly demonstrating that her will was in no way overborne by the officers. Thus, we find that the State met its burden of showing that Andersen's statements were voluntary. Accordingly, we reverse the decision of the district court suppressing her statements.

## IV. CONCLUSION

We reverse the district court's order suppressing Andersen's statements.

Chief Justice BURDICK, Justices BRODY, BEVAN, and Justice Pro Tem WALTERS **CONCUR.**

8