**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48397**

| | |
|---|---|
| STATE OF IDAHO,<br><br>       Plaintiff-Respondent,<br><br>v.<br><br>LAYNE CURTIS MARTIN,<br><br>       Defendant-Appellant. | )<br>)  **Filed:  February 9, 2022**<br>)<br>)  **Melanie Gagnepain, Clerk**<br>)<br>)  **THIS IS AN UNPUBLISHED**<br>)  **OPINION AND SHALL NOT**<br>)  **BE CITED AS AUTHORITY**<br>)<br>)<br>) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County.  Hon. Jay P. Gaskill, District Judge.

Judgment of conviction for possession of a controlled substance, possession of a controlled substance with intent to deliver, and unlawful possession of a firearm, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Layne Curtis Martin appeals from his judgment of conviction for possession of a controlled substance with intent to deliver, Idaho Code § 37-2732(a)(1)(A); possession of a controlled substance, I.C. § 37-2732(c)(1); and unlawful possession of a firearm, I.C. § 18-3316. Specifically, Martin challenges the district court's denial of his motion to suppress.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Late one evening in October 2019, at approximately 11:30 p.m., Officers Macuk and Moyle were on patrol in a hotel parking lot in Lewiston.  They observed Martin exhibiting suspicious behavior including walking around vehicles, looking inside of vehicle windows, and watching other people in the parking lot remove items from a pickup truck bed.  Martin eventually opened

1

and closed an SUV's back hatch, got into the SUV, drove it towards the front entrance of the hotel, and then returned to park it in a stall close to where it had been originally parked. Martin then exited the SUV and walked toward the hotel. At this point, Officer Macuk exited the patrol vehicle, approached Martin, and made contact with him. Martin explained he was renting the SUV. Having no reason to continue further contact with Martin, Officer Macuk allowed Martin to go and he walked into the hotel.

Meanwhile, Officer Moyle looked into a window of the SUV and observed what he claimed to be drug paraphernalia. As Officer Macuk was walking back to the SUV after contacting Martin, Officer Moyle advised Officer Macuk that Officer Moyle could see drug paraphernalia on the floorboard of the rear seat. Officer Macuk then looked in the SUV window and, like Officer Moyle, saw what Officer Macuk claimed to be drug paraphernalia. While the officers were looking inside the SUV, Martin exited the hotel with a female, saw the officers, stopped, and began walking back towards the hotel.

The officers detained Martin. While Officer Macuk spoke to the female, Officer Moyle obtained the SUV keys from Martin, handcuffed him, and sat him on the curb. During the search of the SUV, Officer Moyle located the items the officers had seen through the SUV window, as well as financial transaction cards in another person's name and a loaded handgun. Officer Macuk obtained a hotel key for the female's room and secured the room, and a search warrant was obtained. During a search of the hotel room, law enforcement discovered methamphetamine and other drugs, counterfeit currency, digital scales, small plastic baggies, and two firearms.

The State eventually charged Martin with trafficking methamphetamine, forgery, two counts of possession of a controlled substance, and three counts of unlawful possession of a firearm and alleged Martin was a persistent violator. At the preliminary hearing, the State called several witnesses, including Officers Macuk and Moyle. Both of the officers testified they believed the items they observed through the window of Martin's SUV were items used to consume "a dab" of "marijuana oil," which Officer Moyle referred to as a "dabs kit."

After being bound over to the district court, Martin filed a motion to suppress all the evidence seized from his SUV and the hotel room. In support of this motion, Martin submitted Officer Moyle's body camera video, the preliminary hearing transcript, and a photograph of the

2

alleged dabs kit seized from the SUV.[1]  The State opposed the motion, arguing the seizure was lawful under the plain view doctrine and the automobile exception to the warrant requirement.

The district court held a suppression hearing, but neither party presented any witnesses. During the hearing, the court indicated it had considered the preliminary hearing transcript and Officer Moyle's video.  In a written decision, the court ruled that the officers' seizure of evidence was lawful under the plain view doctrine.  The court rejected Martin's argument that the items the officers observed in the SUV "were not immediately apparent as evidence of a crime" and that Officer Moyle's video showed he did not know what the observed items were.

Subsequently, Martin filed a motion for reconsideration, challenging the district court's conclusion that Officer Moyle's video did not show that he did not know what the items he observed in Martin's SUV were.  Martin also submitted two affidavits in support of his motion, including one of an owner of retail cannabis shops who attested the items the officers observed in Martin's SUV could be used to consume cannabis but also could be used legally to consume CBD, which does not contain the illegal substance THC.  After a hearing on Martin's motion for reconsideration, the district court issued a written decision stating it had reviewed the video, the preliminary hearing transcript, and the affidavits.  The court denied the motion, concluding the State had met its burden to establish the warrantless seizure was justified under the plain view doctrine.

Following the denial of Martin's motion for reconsideration, he conditionally pled guilty to an amended charge of one count of possession of a controlled substance, possession of a controlled substance with intent to deliver, and unlawful possession of a firearm and reserved his right to appeal the denial of his suppression motion.  Martin timely appeals.

## II.

## STANDARD OF REVIEW

Ordinarily, the standard of review of a suppression motion is bifurcated.  When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found.  *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).  At a

---

[1]     Martin also presented a picture of an aromatherapy device "for sale online" in support of his suppression motion.  The State objected to this picture, and the district court indicated it did not consider it.

3

suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Under certain circumstances, however, this Court may freely review and weigh the evidence in the same manner as the trial court. *State v. Andersen*, 164 Idaho 309, 312, 429 P.3d 850, 853 (2018) (applying free review standard to appeal of decision on suppression motion). Where the parties did not present any witnesses and this Court has the exact same evidence before it as the trial court considered, this Court need not extend the usual deference to the trial court's evaluation of the evidence. *Id.*

In this case, the parties did not present any witnesses at the suppression hearing and the only evidence before the district court was the video, the preliminary hearing transcript, the photograph of the alleged dabs kit, and Martin's affidavits. This exact same evidence is before this Court on appeal, and the parties agree this Court may freely review the evidence under *Andersen*.

### III.

### ANALYSIS

Martin challenges the district court's denial of his suppression motion. He asserts the plain view doctrine does not apply. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

The plain view doctrine is one of these well-recognized exceptions and permits a warrantless seizure where certain conditions are met. *State v. Claiborne*, 120 Idaho 581, 586, 818 P.2d 285, 290 (1991). First, the officer must lawfully make an initial intrusion or otherwise properly be in a position from which he can view a particular area. *Baldwin v. State*, 145 Idaho 148, 155, 177 P.3d 362, 369 (2008). Second, it must be immediately apparent to the officer that the item he observes may be evidence of crime, contraband, or otherwise subject to seizure. *Id.* This second requirement is met when the officer has probable cause to believe the observed item

4

is associated with criminal activity. *Id.* at 155-56, 177 P.3d at 369-70.

Probable cause is a flexible, common-sense standard. *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct. App. 1991). It merely requires that the facts available to the officer would warrant a person of reasonable caution to believe the observed item may be contraband, stolen property, or useful as evidence of a crime. *Id.* An officer may base a probable cause determination on the surrounding facts and circumstances and may draw reasonable inferences based on his training and experience. *State v. Buterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct. App. 2002). Absolute certainty is not required for an officer to have probable cause. *State v. Tamez*, 116 Idaho 945, 946, 782 P.2d 353, 354 (Ct. App. 1989). Rather, probable cause does not demand any showing that the officer's belief "be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). In determining probable cause, the Court may consider the officers' collective knowledge. *Claiborne*, 120 Idaho at 586, 818 P.2d at 290.

On appeal, Martin challenges the district court's conclusion that the second requirement of the plain view doctrine was met. Specifically, he argues the officers did not have probable cause to believe the dabs kit was evidence of a crime. In support, Martin points to the officers' testimony during the preliminary hearing regarding the dabs kit. He notes Officer Moyle "could not give the technical names" for the items in the dabs kit; "did not know how the small metal piece was used"; "had not personally seen somebody using the crescent moon-shaped piece of glass"; and "did not know how to use most of the items" in the dabs kit. Similarly, Martin notes that Officer Macuk "could not explain how . . . two items were used."

Based on this testimony, Martin asserts the officers did not credibly testify they recognized the items as evidence of a crime before seizing them. We disagree. Both Officers Moyle and Macuk testified that, based on their training and experience, they recognized the items as a dabs kit commonly used for ingesting marijuana. For example, Officer Macuk testified that he had "seen similar items [of drug paraphernalia] used" and that the items "vary from device to device slightly." Officer Moyle described the items "commonly seen in a dabs kit" to include "a body of a tube or something like that to smoke marijuana [and] silicone containers that hold the dabs of marijuana product." Officer Moyle also testified that he had "encountered people with dabs kits" and that "the green container and the glass bowl" in the dabs kit removed from Martin's SUV were similar to those dabs kits Officer Moyle had previously seen. Finally, Officer Moyle testified on cross-examination, that he had seen "several" dabs kits like the one in this case and that he had

5

been "the primary officer who collected the kit" in "multiple cases," which he described as "more than four" cases and "a lot."

Despite this testimony regarding the officer's experience, Martin contends the officers "did not show a level of experience adequate to support a reasonable belief that the items seen in [Martin's SUV] were evidence of a crime." In support, he attempts to distinguish *Ramirez*, 121 Idaho 319, 824 P.2d 894. In that case, an officer shined a flashlight inside a vehicle and observed a cigarette lighter on the floor of the passenger's side; a spoon lying face up on the driver's seat; and what appeared to be a dark, tarry residue in the spoon's bowl. *Id.* at 321, 824 P.2d at 896. The officer then opened the vehicle door; took the spoon, which he believed had been used to prepare heroin; determined the identity of the vehicle's owner, Ramirez; and arrested him for possession of drug paraphernalia. *Id.* Appealing the denial of his motion to suppress the spoon as evidence, Ramirez argued that the State "failed to sufficiently detail the level of experience drawn upon by Officer Garza in associating the spoon and residue with drug use." *Id.* at 323, 824 P.3d at 898. Rejecting this argument, this Court ruled the State showed "a level of experience adequate to support the officer's reasonable belief that the spoon he observed was drug paraphernalia." *Id.* In support, the Court noted that the officer "had made a previous arrest for possession of heroin"; "knew what the substance looked like"; and "was aware of the practice, common among heroin users, of melting the substance in an ordinary spoon." *Id.*

Martin contends that this case "would be more comparable with *Ramirez*" if the officer in that case "had been unable to name the spoon or explain how it was used to prepare heroin for injection." We disagree. That the officer in *Ramirez* was able to identify a common household item by name but the officers in this case could not provide a technical name for each of the separate items in the dabs kit does not mean Officers Moyle and Macuk lacked the requisite training and experience to recognize the kit as drug paraphernalia. Contrary to Martin's arguments, there is no requirement an officer must know the technical names of each individual item in the dabs kit, know how to assemble or use the items, determine from his initial observation whether the items had been used, or have personally witnessed someone using the items in order to identify them as drug paraphernalia. Martin fails to cite any legal authority otherwise. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (ruling a party waives appellate issue if either authority or argument is lacking).

6

We also disagree with Martin's assertion that the officers' statements on Officer Moyle's video establishes that "they did not recognize what the observed items were before seizing them." Martin relies on a portion of the video, at approximately thirty-three minutes, when the officers are searching Martin's SUV. He contends that at this point the video shows "Officer Moyle picked up the package containing the alleged dabs kit, and asked 'What is all this stuff? What is this?' Officer Moyle then looked at the green and yellow silicone container among the items, and stated, It's new. It's enough for us." [2]

A review of Officer Moyle's video, however, refutes Martin's description. Officer Moyle is never seen in the video because he recorded the video using his body camera. Necessarily, the officer appearing in Officer Moyle's video is Officer Macuk, not Officer Moyle. Rather than Officer Moyle picking up the dabs kit, his video shows Officer Macuk picking it up from the SUV while Officer Moyle states, "What is all this stuff?" The video then shows Officer Macuk picking up and inspecting what appears to be a medical-type wristband while Officer Moyle states, "What is this?"

Martin attempts to refute that Officer Macuk is holding and looking at a wristband by arguing that "there was no testimony from the officers or any other evidence that the item Officer Macuk picked up was a medical bracelet." To the contrary, however, two other pieces of evidence support that Officer Macuk is holding and looking at a wristband, not the green and yellow silicone container, when Officer Moyle states, "What is this?" First, two photographs of the dabs kit--one of which was admitted into evidence during the preliminary hearing and one of which Martin submitted in support of his suppression motion--show the contents of the dabs kit, including a medical-type wristband and a green and yellow silicone container. That container is a distinctly different shape, size, and color from the wristband making it clear Officer Macuk is holding the wristband when Officer Moyle inquires, "What is this?" Second, while holding the wristband, Officer Macuk states, "the guy he said he took to the hospital," apparently referring to a statement Martin made earlier in the video about someone being in the hospital.

Accordingly, the evidence shows Officer Macuk's statement about "What is this?" relates to the wristband and not to the green and yellow silicone container as Martin contends. Regardless, the statements inquiring "What is all this stuff?" and "What is this?" are inadequate to show that

_____

[2] Both parties agree Officer Moyle made these statements.

either Officer Macuk or Officer Moyle did not immediately recognize the dabs kit as drug paraphernalia when they observed it through the SUV window. *See Brown*, 460 U.S. at 742 (noting probable cause does not demand officer's belief "be correct or more likely true than false"); *Tamez*, 116 Idaho at 946, 782 P.2d at 354 (noting absolute certainty is not required for probable cause).

Further, we disagree with Martin's assertion that Officer Moyle's video contradicts his testimony that "he did not know if the small metal piece [in the dabs kit] appeared to be used" because the video shows him "looking at the items while stating, 'It's new.'" Again, the video neither shows a view of Officer Moyle nor establishes what he may have been looking at when he made this statement. Finally, we reject Martin's assertion that Officer Moyle's testimony is not credible because he did not recall having a conversation with Officer Macuk about the dabs kit at "about 33 minutes into" Officer Moyle's video.

Like the district court, we conclude the State met its burden of showing that the officers had probable cause to believe the dabs kit was associated with criminal activity under the plain view doctrine. Substantial and competent evidence shows the officers immediately recognized the dabs kit as incriminating. Because the officers had probable cause to believe the dabs kit was associated with criminal activity, they had probable cause to believe Martin's SUV contained evidence of a crime, which justified the search of Martin's SUV under the automobile exception. *See State v. Daily*, 164 Idaho 366, 368, 429 P.2d 1242, 1244 (Ct. App. 2018) ("In determining whether a search is authorized pursuant to the automobile exception, the question is whether there is probable cause to believe that the automobile holds contraband or evidence of a crime.").

## IV.
## CONCLUSION

The district court did not err when it denied Martin's suppression motion. Accordingly, we affirm the judgment of conviction.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.